IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Burnam,<br><br>    Petitioner,<br><br>vs.<br><br>Dennis Smith, Warden,<br><br>    Respondent. | No. CV 12-00043-PHX-PGR (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

On March 16, 2012, Petitioner Kenneth Burnam, an inmate currently incarcerated at the Federal Correctional Institution ("FCI"), in Welch, West Virginia, filed a *pro se* Amended Petition for Writ of Habeas Corpus (hereinafter "habeas petition") and Brief in Support pursuant to 28 U.S.C. § 2241, raising two claims: (1) that education staff may not unilaterally designate common areas out of bounds to inmates without express authorization from the Warden or Captain, and (2) the Incident Report that was issued improperly served as a predicate for the Bureau of Prison's revoking "good-time credit" in another case involving a different Incident Report. (Docs. 8, at 4-5; 9, at 1.) Petitioner requests that the incident report be expunged and good-time credit restored. (Doc. 8, at 6; 9, at 8.)

On June 26, 2012, Respondent filed his Answer urging the Court to deny Petitioner's habeas petition for the reason that Petitioner did not exhaust his administrative remedies, and alternatively, for the reason that Petitioner's claims lack merit. (Doc. 15.) On July 6, 2012, Petitioner filed a Traverse in Opposition to Respondent's Answer. (Doc. 16.) On May 22,

2013, the referral of this case was reassigned from Magistrate Judge Voss to this Court for further proceedings and a report and recommendation. (Doc. 17.)

## BACKGROUND

Petitioner is currently an inmate housed at FCI in Welch, West Virginia, having previously been incarcerated at the federal prison in Phoenix, Arizona, from June, 2011 until June 6, 2013, and at the federal prison in Lompoc, California, from December 7, 2007, through May 31, 2011. (Docs. 18; 15-1 at 2 ¶2, 24.) Petitioner is serving an 18-year and 6-month sentence, followed by 3 years of supervised release out of the Middle District of Pennsylvania, after sustaining convictions for Maintaining a Place for Manufacturing, Distributing, Storing or Using Controlled Substances in violation of 21 U.S.C. §856(a)(1); Aiding and Abetting in violation of 18 U.S.C. §2; and Criminal Forfeitures in violation of 21 U.S.C. §853(p), and is projected to complete his sentence on April 16, 2015, presuming Petitioner earns all available good conduct time. (Doc. 15-1, at 2, 8.)

On February 23, 2011, an Incident Report was prepared by O. Magana, Education Specialist at the Federal Bureau of Prisons, that described the following events taking place the same day at 7:37 a.m.:

> On February 23, 2011, at approximately 7:37 am [Petitioner] entered the Education Department. The 7:30 am movement is a work call movement and only Education workers are allowed into the Education Department during this move. I have told [Petitioner] to not enter the department during the work move because he is not on the Education work crew (see attached work crew roster). Today, [Petitioner] came into the department after being told not to enter into the department. [Petitioner] came into the department after being told not to enter into the department. [Petitioner] is not authorized to enter the department during the work call movement.

(Doc. 8, at 10-11.)

The Incident Report charged Petitioner with Being in an Unauthorized Area in violation of Code 316. (Doc. 8, at 10.) Investigator S. Duden provided Petitioner a copy of the report and noted that Petitioner had made the following statement after being advised of his rights in the process: "[e]veryone was informed that you can't stay in education. I went in to hand something off to an inmate worker there and left." (Id., at 15.) The matter was referred to the Unit Disciplinary Committee ("UDC"). (Id.) Before the UDC, Petitioner

- 2 -

1 admitted that he entered the education department to pass a book to another inmate, but
2 denied that he had previously been instructed by Magana not to enter the education
3 department. (Id., at 14.) The UDC determined that Petitioner had committed the prohibited
4 act and imposed a sanction of 90-days loss of phone/commissary/visitation. (Id., at 13.)

5       Petitioner appealed the UDC decision to the Warden, arguing that his conviction and
6 sanction should be overturned because "the Education department [had] not posted a
7 memorandum prohibiting inmates from dropping off books at 7:30 a.m.; the incident report
8 [did] not list any dates in which the Education Specialist claim[ed] to have instructed
9 [Petitioner] not to enter the Education department at 7:30 a.m.; and the sanctions imposed
10 are particularly harsh and should be reduced." (Doc. 8, at 19.) On April 5, 2011, the Warden
11 determined that the "UDC's decision was based on evidence sufficient to support a finding
12 of guilt and your admission that you entered the Education department. Furthermore, the
13 sanctions imposed were proportionate to the severity of the offense." (Id., at 24.)

14       Petitioner then filed an appeal to the Regional Director, claiming that the incident
15 report was vague and prepared in retaliation for Petitioner's having reported staff impropriety
16 in proctoring a test, that neither the Warden nor the Education Supervisor had issued a
17 memorandum prohibiting inmates from entering the Education Department to return books
18 during the 7:30 a.m. prisoner movement, and that the incident report should be expunged.
19 (Doc. 8, at 20.) The Regional Director denied relief, finding that "[d]irections or orders from
20 staff constitute putting a certain location out of bounds if that is the subject of the order," and
21 that "the reporting of alleged staff misconduct [as Petitioner had claimed] does not authorize
22 [Petitioner] to ignore the orders or previous commands of staff." (Id., at 23.) The Regional
23 Director concluded that "the UDC substantially complied with regulations in this matter and
24 met the evidentiary standard." (Id.)

25       Petitioner appealed the decision of the Regional Director to the General Counsel, the
26 final level of appeal, but his appeal was rejected June 25, 2012, for failure to include required
27 documentation, that is a copy of the institution's administrative remedy request and readable
28 copies of BP-11. (Doc. 15-1, at 2 ¶3, 15.) The mailing address for Petitioner on the rejection

1  was Phoenix, FCI. (Id., at 15) Petitioner was provided 15-days to correct these deficiencies, but failed to do so. (Id., at 2 ¶3.) Petitioner has filed a total of 93 administrative remedies since 2001. (Id., at 2 ¶4.) Petitioner claims that he did not receive the General Counsel's rejection and instruction for remedying his deficient filing, and that "[Petitioner] may not be faulted for the Respondent's negligences in assuring that a copy of the rejection was provided to [Petitioner] while in transit to FCI Phoenix." (Doc. 16, at 3-4.) Even if this were true, the record does not reflect that Petitioner followed up with any inquiries to the General Counsel to determine the status of his appeal when he reached his destination, or before filing his habeas petition.

**DISCUSSION**

I.     Petitioner Failed to Exhaust His Administrative Remedies.

The BOP has a formal 3-tier administrative remedy system described at 28 C.F.R. §§542.10 *et seq*. The inmate must initially try to resolve the dispute informally with BOP unit staff before formally filing an administrative grievance with the Warden. 28 C.F.R. §§542.13(a); 542.14. The inmate may then appeal an adverse decision to the Regional Office. 28 C.F.R. §542.15(a). He may then challenge the Regional Office's decision by appealing to the General Counsel, on the appropriate form (BP-11) designed for Central Office Appeals. 28 C.F.R. §542.15(b). Appeal to the General Counsel is the final administrative appeal. 28 C.F.R. §542.15(a). Once an inmate has completed this administrative process, if still aggrieved, he may then file a habeas petition in the appropriate district court.

As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under §2241. Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citation omitted). This exhaustion requirement is "subject to waiver in §2241 cases because it is not a 'jurisdictional prerequisite.'" (Id.) "Typically, exhaustion can be waived 'if pursuing those [administrative] remedies would be futile.'" Id. (citing Fraley v. U.S. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)).

///

1        Here, Petitioner never corrected the deficiencies in his appeal to the General Counsel.
2 Thus, he never exhausted his administrative remedies.  Petitioner claims he never received
3 the June, 2012, rejection notice because he was in transit at the time he filed his appeal.  This
4 does not explain why his  transfer approximately 1-year earlier from the federal prison in
5 Lompoc, California, would have interfered with his receipt of the rejection notice while he
6 was housed at FCI, Phoenix.  Even if Petitioner did not receive the rejection notice, there is
7 nothing in the record to suggest that Petitioner made any inquiries into the status of his
8 appeal, other than his unsupported assertion that "[a]fter arriving at FCI Phoenix repeated
9 request for copies were submitted but copies were not obtained." (Doc. 9, at 3 FN2.)  It bears
10 noting that Petitioner is not unfamiliar with the administrative process, having filed 93
11 administrative remedies since 2001.  (Doc. 15-1 at 2 ¶4.)

12        Petitioner also does not demonstrate that his appeal involved the application of an
13 official Bureau of Prisons policy, such that exhaustion of his remedies would have been
14 futile.  See, Fraley, 1 F.3d at 925 (exhaustion was futile where BOP policy that time spent
15 in on home confinement prior to sentencing does not qualty as official detention would
16 almost certainly have resulted in the denial of further administrative appeals). Petitioner's
17 charge and conviction did not involve the application of any official Bureau of Prisons
18 policy, but was simply a hearing on the facts and appeal of the UDC determination.
19 Petitioner argues that his appeal involved the authority of Educational Specialist Magana to
20 designate an area off-limits to Petitioner.  Setting aside that Petitioner did not raise this issue
21 at the hearing level, Petitioner provides no authority that a specific Bureau of Prisons policy
22 is implicated, other than to assert that "BOP regulations do not support" this authorization.
23 (Doc. 9, at 7.)  The Regional Director addressed this claim by noting that "[d]irections or
24 orders from staff constitute putting a certain location out of bounds if that is the subject of
25 the order."  (Doc. 8, at 23.) Petitioner has not established that proper exhaustion of his
26 administrative remedies would have been "futile," and therefore this Court will recommend
27 that Petitioner's habeas petition be denied and dismissed.
28 ///

- 5 -

II.     The UDC's Finding was Supported by "Some Evidence."

The Due Process Clause requirements are satisfied if "some evidence" supports the decision of the disciplinary committee. Superintendent, Mass. Correctional Institution, Walpole v. Hill, 472 U.S. 445, 456-57 (1985). Under that standard, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id., at 455. The standard is "minimally stringent." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). It only requires "*any* evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-456, emphasis added in Cato).

The UDC stated that it based its decision on the statement contained in Section 11 of the Incident Report that Educational Specialist Magana found Petitioner in the education department during a work movement and she had previously warned him not to come to the education department during a work movement. (Doc. 8, at 13.) The UDC also relied on the statement by Petitioner to the investigating lieutenant, wherein Petitioner stated, "Everyone was informed that you can't stay in education. I went in to hand something off to an inmate worker there and left." (Id.) The UDC additionally relied on the statement by Petitioner to the UDC that he had "entered the Educ Dept to pass inmate Kilgore a book." (Id., at 14.)

This Court finds that the UDC performed a detailed analysis of the facts contained in the incident report and Petitioner's statements, that the key relevant facts supporting the UDC's findings were contained in the incident report, and that the UDC's findings and conclusions were supported by ample, if not substantial evidence. The fact that Petitioner later claimed that Educational Specialist Magana was without authority to designate an area off-limits does not alter this finding, and in any event, Petitioner's claim is not supported by the facts in the record. The Court therefore finds that Petitioner was not deprived of his due process rights in the finding by the UDC that Petitioner had committed a violation of Code 312, Being in an Unauthorized Area.

///

///

Petitioner also claims that the incident report served as a predicate for rescinding good-time credit on a subsequently charged violation. (Docs. 8, at 5; 16, at 4.) Petitioner asserts that the subsequently charged violation is the subject of another habeas petition filed by Petitioner pending before this Court. See, Burnam v. Smith, 2:12-CV-0128-PGR (MHB). Petitioner provides no basis in his habeas petition for his claim that the Incident Report in this case served as a basis for the sanctions that were imposed in his other pending case. In fact, the Court has reviewed the record in Burnam v. Smith, 2:12-CV-0128-PGR (MHB), and finds no support therein for Petitioner's claim.

## CONCLUSION

The Court finds that Petitioner failed to exhaust his administrative claims within the Bureau of Prisons, that there was ample, if not substantial evidence to support the UDC's findings, and that Petitioner's claim that the Incident Report in the instant case served as a basis to revoke good-time credit in another case is without merit. Petitioner's demand for the expungement of the incident report and the restoration of good time credits should therefore be denied. For these reasons the Court will recommend that Petitioner's habeas petition be denied and dismissed.

**IT IS THEREFORE RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus (Doc. 8) be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to

1  appellate review of the findings of fact in an order of judgment entered pursuant to the
2  Magistrate Judge's recommendation. <u>See</u> Fed. R. Civ. P. 72.
3  DATED this 28th day of June, 2013.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge